SALTER, J.
WTVJ-NBC 6, a television network affiliate (WTVJ), and its reporter, Jeff Burnside, seek a writ of certiorari to quash an order compelling Burnside to appear for deposition on a limited topic relating to an earlier news broadcast. The broadcast (as well as the underlying lawsuit in which the subpoena was served on WTVJ and Burnside) covered a dispute between the City Council of the City of Homestead, Florida, and its former City Manager, Mike Sheha-deh. The issue presented below was whether WTVJ and Burnside were entitled to a protective order under Florida’s “journalist’s privilege,” section 90.5015, Florida Statutes (2010).
We find that WTVJ and Burnside were entitled to invoke the qualified privilege set forth in section 90.5015; that Shehadeh did not “make a clear and specific showing” regarding two of the three elements identified in the statute; and that the trial court’s order[1] compelling WTVJ and Burnside to appear for a limited-scope deposition should be quashed.

Background

In the subpoena duces tecum and motion by Shehadeh to compel WTVJ and Burnside to appear for deposition, Sheha-deh sought “the original of a CD/Diskette of pin messages;[2] text messages; and/or e-mails of employees and/or officials of the City of Homestead believed to have been turned over to the press, including [WTVJ], in connection with the investigation of former Homestead City Manager [Shehadeh].” Shehadeh’s motion represented “upon information and belief’ that the diskette had been given to WTVJ and Burnside between December 2009 and March 2010 “by officials of the City of Homestead, Pat Franklin Investigations, or Richard Weiss, Esq., the City Attorney of the City of Homestead.” Shehadeh and his attorneys also alleged that the diskette “has been circulated to a number of news organizations and other private individuals.” Finally, Shehadeh’s motion to compel alleged that video news reports authored by Burnside suggested that Burnside had received the diskette “either through a public records request from the City of Homestead or a ‘leak.’ ”
The trial court conducted a short motion calendar hearing on the cross-motions to compel filed by Shehadeh and for a protective order filed by WTVJ and Burnside. Shehadeh’s counsel advised the court that he wanted Burnside “to tell us how he got the CD.” The trial court concluded that Burnside could be compelled to appear for a deposition “limited to questioning as to whether he filed a public records request” (because it was a question about a “public act”) and entered an order to that effect; WTVJ’s and Burnside’s present petition is directed to that order.

The Qualified Privilege

Section 90.5015 was enacted in 1998 to protect “professional journalists” against the disclosure of sources and information obtained while actively gathering news. We need not determine here whether it displaced or codified preexisting decisional law affording a similar form of limited privilege.
There is no dispute on this record that WTVJ and Burnside are entitled to invoke section 90.5015 with respect to the infor *106 mation gathered by Burnside regarding the Homestead-Shehadeh controversies. The question is whether Shehadeh made the “clear and specific showing” of all three elements as required to overcome the limited privilege:
(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;
(b) The information cannot be obtained from alternative sources; and
(c) A compelling interest exists for requiring disclosure of the information.[3]
Regarding the first of these elements, the underlying proceeding is an action for breach of Shehadeh’s employment agreement with Homestead. Sheha-deh has taken the position in an earlier, successful motion in limine that his “private and personal PIN and text messages do not constitute public records and are, therefore, not subject to public disclosure.” In his response to the petition for certiora-ri here, however, Shehadeh maintains that he is entitled to know whether a City Commissioner “leaked” the CD to Burnside (as opposed to Burnside’s use of a public records request to obtain the CD and its contents). If the messages were leaked, Shehadeh argues that this “could lead to additional claims against the City and others.” Burnside’s answer to the question, “did you obtain the CD from the City of Homestead through a public records request?” is relevant and arguably material to unresolved issues regarding the City’s basis for terminating Shehadeh’s employment.
Shehadeh has failed, however, to establish the second and third elements as required to overcome the qualified privilege. The City of Homestead can answer questions about public record requests filed by Burnside, WTVJ, or others. She-hadeh has alleged that “the CD has been circulated to a number of news organizations and other private individuals,” but there is no indication in the record before us that any of the “other private individuals” have been questioned regarding the source of their copies. Shehadeh has an array of discovery procedures available to determine whether any of the Commissioners or Homestead employees “leaked” information to Burnside or WTVJ, as an alternative to questioning professional journalists. And Shehadeh has shown no “compelling interest” in the limited questioning authorized by the trial court, as opposed to seeking discovery of parties and non-parties who are not professional journalists engaged in news-gathering.
The statutory journalist’s privilege and its common law antecedents are intended to provide a limited degree of protection for a reporter’s sources of information. The record presented here is precisely the kind of scenario in which the assertion of the privilege should be upheld. The requirements for certiorari — a departure from the essential requirements of law, resulting in “cat out of the bag” irreparable harm — have been met.[4]
Certiorari granted; the order of December 16, 2010, which granted Shehadeh’s motion to compel and denied the motion by WTVJ and Burnside for a protective order, is quashed.

. We previously stayed the trial court's order pending our consideration of additional responses to the petition for certiorari by the respondents.

. "Pin messages” are typically unencrypted text messages sent from one personal han-dheld device, such as a Blackberry, to another without going through an intermediate server.

. § 90.5015(2), Fla. Stat. (2010).

. TheStreet.com, Inc. v. Carroll, 20 So.3d 947, 949 (Fla. 4th DCA 2009) (citing Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla. 1995)).